Case numbers 164146, 4269, 4354 and 4757, 173238, 3480, 3735, 3915 and 3918, and 183077. James Matthews et al versus Chas Kurz and Co Inc et al. Court of argument is not to exceed 15 minutes per side. Mr. Swafford for the appellants. Good morning and may it please the court I'd like to reserve three minutes for rebuttal time if I may. Thank you. As this court is well aware there are 241 appellants in this consolidated appeal today. Four of those appellants are known as the Detroit appellants who are so named because their cases were transferred to Detroit near 30 years ago where the Detroit appellants assert that the appellees in those cases waived their personal jurisdiction defense. Three Third Circuit Court of Appeals opinions and this court in the Kalama decision all agreed that that behavior constituted waiver. Because we believe that this issue as it relates to the Detroit appellants is so clear and the record is so overwhelming and the briefing complete even with supplemental briefing. The appellants they don't plan on spending much time on that during oral argument unless of course the court has questions about that. For the 237 remaining appellants though we believe the question presented to this court is this. What remedies are available to an MDL court where there's a lack of personal This is an important matter for this court to decide because there are right now by my count 10 active MDLs within this circuit alone with over 6,500 pending cases. This case is about more than 20 or 30 year old asbestos cases that sat in an MDL black hole for decades. Today's decision matters not just for the 10 MDLs in this circuit but I would argue for the MDLs that exist throughout the country. They're going to look to this court for guidance in answering the question, what remedies are available to an MDL court where there's a lack of personal jurisdiction in the originating court. And the reason it's important is because an MDL court by itself lacks any authority to cure a personal jurisdiction deficiency. It can't transfer the case to another jurisdiction even though the Supreme Court has said time and again transfer is a preferable remedy. The federal judiciary has followed that precedent for 60 years. The Congress and the President in enacting statutes 1404, 1406, 1631 have all said we prefer transfer to dismissal. We'd like to resolve cases based on the merits not on justice defeating technicalities. So that's why today's What are you asking us to do in this case exactly? This thing sure has bounced around a long time. It has, hasn't it? I mean it's been a lot of places with a lot of different judges and a lot of different opinions. And if the people are injured and have a right to recover they should be able to recover instead of getting bounced around. I'm sure a lot of them are dead now and seriously ill and so forth. Well you're right about that, Your Honor, and we agree with that. We believe that these cases should be resolved on their merits. And so what I'm asking this court to do today is simply reverse Judge Rebrano for his one erroneous conclusion, which was dismissal was his only remedy. It wasn't. By my count, and you guys are smarter than me, you might find more, I think there were three remedies that he could have considered besides dismissal. But he did consider sending it back to the JPML. The JPML, back to the originating court. I mean he says that specifically, right? In Jacob's opinion, he says I could do this but I'm not going to do it. No, I don't think he does say that at all. In fact, his exact words are, for these same reasons, and at that point he's talking about the previous four remedies that he considered that he believed he was precluded from considering under lexicon and 1407. He says, for these same reasons it would not be appropriate for this court to suggest remand of these cases to the Northern District of Ohio for them to sort out. So he didn't believe that he had the authority to do that. He looked at what his options could have been and then said I can't even consider them because lexicon and 1407 preclude me from doing so. So he did go through a list of options, but he ultimately decided that none of those options were actually available to him. The only option that he was left with was dismissal. So you think he thought that he was legally unable to do anything other than what he did? Absolutely. Absolutely. How do you then explain the earlier decision by Roberto in an earlier MDL where he applied lexicon and remanded the case to the transferor court with a recommendation to transfer it based on proper venue? It seems to me that that recognizes his right to do that. Sure. And we argued for that to happen. And we believe that is an option he could have taken. But his words speak for themselves when he says for these same reasons. How do his actions speak for himself that he had previously recognized? You've raised a really important issue. What does lexicon mean? And what does it mean to MDL cases in the future? So the question becomes, were there loose lips or a loose explanation in Jacobs? In looking at these cases, they're not models of clarity. I thought that he had recognized the availability of various arguments. He had modeled that recognition by his earlier decision in the case to actually make the transfer. And that he made a determination that such a transfer in these cases would not be in the interest of justice. Now, why is that an incorrect interpretation of his opinion? Sure. I think the only thing that we can do in that situation is look to his words, right? Like what he said. And in this decision, this is what he said. He said, even if this court were to find that transferring the Mardot cases would not be contravening lexicon. So that tells us right in the beginning that he believes any transfer-related remedy would contravene lexicon. Now, right after he makes the statement about he wouldn't send these cases back even if he could, which itself presumes it's not available to him, he says this. And this is how he concludes. Given that there's no personal jurisdiction over the defendants and that transfer to other districts is not permissible, the motions to dismiss will be granted. If they're not permissible, he cannot consider them, which is what his whole section on lexicon said. He went through five different remedies. Why is he not saying, look, it's not in the interest of justice to do this. And if it's not, it's not permissible, right? You have to make that finding under 1404 and 1406. Like, if you're making a transfer, it's always a threshold that you have to decide that it was in the interest of justice. He says, it's not in the interest of justice, right? That's for the same reason, footnote 18. So then he says, it's not permissible because I have not made the requisite, I cannot make the requisite finding, therefore I can't do this. No, I don't think that's what he's saying at all. Because he begins that paragraph with even if I wanted to, I would still not give it because of these factors. So he's precluded himself from considering that as an option. It's not that he considered it and rejected it. I mean, his words say, I can't even consider it. It's not permissible for me to even consider it. And so that's why he was left with a remedy, dismissal, that was, according to him, the only remedy available, which he was fine with. But that's not how MDL courts need to look at issues when there's a lack of personal jurisdiction. It's not just dismissal. There are other remedies available. This court in Kalama said he could have, like Judge Stranch pointed out today and in her concurring opinion in the Kalama decision, that he had other remedies available to him. He could have sent it back with a recommendation that it be transferred to X, Y, or Z. But he didn't do that because his words say he couldn't do it. If we believe that the case does show that the judge believed he had jurisdiction, that he was, it was within his bucket of remedies to make a transfer back or make even a recommendation with a transfer that it be sent to a case, to a court that did have jurisdiction, then under that you would concede that those, you would be back at the interest of justice. We would. Because you would have to concede that the law allows that and he considered it. And so now we're at the interest of justice. And if that's the case, what is your argument for why he abused his discretion in making that determination? Absolutely. Sure. Assuming that's true, and I don't believe that's true. I understand. That's fair. Assuming it is true, these cases sat in an MDL black hole for 20 to 30 years. And the underlying court where they came from, Ohio, had already said that transfer was the appropriate remedy. But then didn't transfer them. I mean, that's the... Sure. There are a number of points in this case that I find absolutely inexplicable. Sure. Judge Lambrou says, I'm going to transfer them. Here's a list of the places I'm going to transfer them to, and then doesn't do it. Sure. Sorry. And the reason for that, we believe, goes back to the waiver part of it, where they waived. And that's why he never transferred them. I mean, that's the only explanation. And so because of that, and the fact that Judge Lambrou said, hey, lack of personal jurisdiction transfers the appropriate remedy. And for the other reason is this. A statute of limitations in a Jones Act case is three years. For cases that sat in front of Judge Lambrou for years, then languished in the MDL court for 20 to 30 years, when Judge Rubino finally said, well, I'm going to dismiss the cases, well, all of a sudden, you've got 241 people who have no remedy. It's not like we can refile their cases anywhere. Their statute of limitations ran out in the 80s or the 90s. And of the 241 in this case, all of those were filed subsequent to the statements regarding waiver in the 1991 hearing that apply to the Detroit appellants, correct? With the exception of the Detroit appellants. The four Detroit appellants. No question. And so how do you argue the universality of that waiver that would apply to subsequently filed cases after the court has said to the counsel, there is no jurisdiction in my court? Sure. Our understanding of what transpired then with the hundreds of defendants that existed at that time when they answered and waived was that they were going to be okay with being amenable to suit in Ohio. Now, whether that was a mistaken belief on our part or not. For all time? For everybody? Even subsequent cases? You're saying the waiver was... Sure. That was our understanding. They'll welcome every case that could be filed and they would be acceptable in northern Ohio? Sure. They would be waiving. I mean, this is not just... Well, not... This is not just you have the ability to file here. This is, and as counsel to these defendants, we are waiving any dispute as to personal jurisdiction. That was our understanding. Now, obviously the appellees are going to disagree with that vociferously, but that was our understanding and that was why we continued to file lawsuits there. Now, mistaken as that might have been, that doesn't mean all of a sudden that dismissal is the proper remedy. I mean, these cases can be transferred back to, or you can remand the cases back to Ohio and say, figure out where they go. Transfer is probably the best remedy. When a case was filed in Ohio following, after all of these discussions about personal jurisdiction, and then it was sent to an MDL, how did it languish? How did the plaintiff's counsel allow an MDL proceeding with that many people in it to languish for 10 years before anything happened? I think that's a fair question. Now, my understanding of what happened during that timeframe is that the MDL court in Pennsylvania would only allow cases to be remanded back to Ohio if two things were true. They had a mesothelioma diagnosis and they were living. I don't have to tell you guys. Many of them had passed away. Yeah, they die. Usually your life expectancy at diagnosis is three months. Then why were proceedings not undertaken in the MDL proceeding in Pennsylvania? I mean, it was dead in 10 years in the MDLed court. Sure. To be fair, I think Judge Rubreno, as soon as he took the bench, he began to administer it. There was a previous asbestos MDL, the land-based MDL, that he was busy taking care of. I'm certain there was no way he could administer both at the same time. So in 2010 or 11, when he turned his eye to the MARDOC asbestos docket, then he was able to deal administratively with all of the cases that were there. Thank you for your rebuttal time. Good morning, Your Honors. May it please the Court, I'm Harold Henderson, arguing on behalf of the many shipowner defendant appellees in these consolidated appeals. As the Court has acknowledged, this particular issue has been before a previous panel of the Court in the Kalama decision in 2017, a published decision that addressed the very same MDL court orders that are at issue here and are based on the very same evidence of purported waiver that were presented to Judge Rubreno at the MDL level as considered by Kalama. Your opposing counsel argues that this is different from Kalama because this judge indicated that he did not have the capacity to give them the remedy that they requested, whereas Kalama found that there was not an abuse of discretion in making some of those determinations, and that's a distinction. Why is that incorrect? Well, Your Honor, I believe that the Kalama decision adequately covers the argument made by counsel where the Court said, furthermore, the MDL court did not abuse its discretion by refusing plaintiff appellant's proposed alternative of requesting the JPML to remand to the Northern District of Ohio with instructions for the Northern District of Ohio to transfer the cases to an appropriate venue. This approach is allowed but not mandated under lexicon. See, that's the key. He argues that Judge Rubreno did not understand that lexicon allowed that to occur. That language assumes that everybody agrees it's allowed, but it's not an abuse of discretion to refuse to do it. I believe that the scope of that quote that I was reading from Kalama encompasses the referring to in a sentence with the opinion that begins, even if. The even if does not necessarily equate to the interpretation that the appellants place on it, which they would say that means he thought he didn't have the ability to do it. I would suggest there's an alternative interpretation of that, which is it doesn't really matter whether I do or I don't because I'm not going to do it within my discretion. There are factors that the court cited. Did the court say that? Did the court say it orally or in an order? I'm referring to the opinion, Your Honor. Okay. That's what he said in opinion. No, I'm saying there is an interpretation of the phrase even if. I'm suggesting there's an alternative interpretation of that phrase that's in the order, Judge Seiler. I would say that the even if means it doesn't really matter because my choice, whether I could or I couldn't, is not to recommend that the JPML remand. And as Judge Stranch pointed out, Judge Rubino was fully aware of that option having done it before. So it's not that he felt himself foreclosed. He exercised his discretion and appropriately so in saying that I'm not choosing to do it because the phrase that I didn't get a chance to finish from the quote from Kalama, the MDL court correctly reasoned that yet another transfer after nearly 30 years of litigation would not serve the interest of justice and there's no guarantee that had the court recommended remand and subsequent transfer, the JPML would have adopted the recommendation. So Judge Rubino fully understood, considered, and appropriately exercised his discretion and the prior panel of this court in Kalama said it wasn't appropriate. It was and appropriate. My voice may have... And Kalama was reviewing the same opinion, right? The very same MDL court orders, the very... Yes, and they essentially argued as the first sentence of the quote that I read where the prior panel said, the MDL court did not abuse its discretion by refusing plaintiff's appellant proposed alternative of requesting the JPML to remand to the Northern District of Ohio with instructions. So that argument was presented and the prior Kalama panel said that doesn't carry the day. Judge Rubino was acting within his discretion in order to, in addressing that. So we believe that that particular finding is now binding because we are dealing, we're not only dealing with parallel circumstances, we're dealing with the very same orders that were addressed by Kalama and Judge Rubino was acting on the very same evidence that had been presented by, at that point, close to 10 different varying numbers of plaintiffs in the thousands at a time who were making those very same arguments. So that argument has been with us since roughly 2013 and going forward and we believe it's been appropriately resolved. You're saying there's no remedy at all here. It's not an abuse of discretion and that settles it. I think that is correct, Your Honor. The basic point is there were options. They were considered by Judge Rubino and he selected the option that was appropriate and Kalama says that selection was within his discretion and it was an appropriate exercise of discretion. As we pointed out... As to the four Detroit appellants, then you would also accept the determination or the arguments in Kalama that those individuals would have I would say first, the footnote discussion in Kalama about waiver is dicta because the Kalama court said anything that was done with regard to transfer of cases to Detroit is not relevant here because none of the cases in Kalama were involved in the transfers to and it focuses on, I think, one key element that has not been addressed and I do wish to address it right now and it's the discussion from a counsel by the name of Richard Bensley at a hearing on January 8, 1991 and that's the discussion in the footnote in Kalama. I would suggest to the court that this court's decision in Bolger v. Woods, 917 Fed 3rd 471 has something very, very important for this court to keep in mind as it deals with it and it discusses that ultimately we must consider all of the relevant circumstances in determining whether waiver, and I'll insert parenthetically, of a defense by conduct has occurred. And skipping over the citation of authority, it continues, and our analysis must be deferential to the district court's assessment of the situation. Those extra circumstances that I think are very, very important for the court to keep in mind are what happened after that discussion on January 8, 1991 in a hearing. Judge Rubino interpreted that discussion as being a waiver in 16 cases for which trials had already started in Cleveland and not to refer to a group of 44 cases that were going to be transferred to Detroit. And yet the language that you cite from that January 8, 1991 hearing clearly refers to Detroit. It says, I want to make sure that the court understood we did not agree or concede to trials of any of these cases in Detroit. We had put our objection on the record before, but trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to in Cleveland. I know you argue in your briefing that that referred to a different set of cases, but this is the words out of the mouth of counsel, and he's talking about the cases in Detroit. You are correct in saying those are the words of counsel, but I would suggest, Your Honor, that it's a misinterpretation of to which cases he is referring. It is ambiguous. This doesn't make any sense to me. Why would he be talking about the 16 cases that were just talking about whether they were going to use the same jury? They're not going to send those cases to Detroit. They're going to use the same jury, right? And then the cases get transferred to Detroit, and immediately there are motions to send them back and a mandamus to this court, and everybody says they should go back to Ohio for trial, right? Meaning trial. We're going to have a trial. We're not going to contest jurisdiction anymore. Now, I think that you've hit some things that are accurate, Judge McBain, but the interpretation, I would suggest, is inaccurate. That statement on January 8th was followed by an order on January 9, 1991, OIL order number 125, transferring. Nine days later, on January 18, 1991, is the motion to vacate that order. That is entirely inconsistent with the interpretation that the statement in the January 8th hearing is we agree to have the case, we've waived jurisdiction. They're opposing the transfers, and it's important to focus on the briefing. What did the objections raise to the transfers? It wasn't you shouldn't transfer because we waived in Ohio. That was never said for the Thompson-Hein clients. What it said is under the Hoffman v. Blaski opinion from the U.S. Supreme Court, there is no judicial power to transfer 44 cases to another district without even considering whether those cases could have been brought there. That is the threshold issue. Under the Hoffman v. Blaski case, the Detroit court would not acquire jurisdiction. Shipowners were faced with the possibility of 44 cases being sent to Detroit in a court that would not acquire jurisdiction, and no matter what that court did thereafter, would be a monumental waste of judicial . . . But the statement made by counsel was that the trials of the Ohio cases in Detroit are something that our clients waived jurisdictional objections to proceed here, so that we could proceed here. I'm struggling with your framing as here's what the court below did incorrectly because I think the framing question is what did counsel concede? Because we know it was a mess down there. He said he was going to transfer, then he didn't transfer. What happened is frequently, shall we say, at odds with procedural propriety. My question is what did counsel say? This language looks to me a whole lot like we've already promised to do this case here. You're going to do pretrial management. Send us back. You're the judge we want. All of those things are evidence of express waiver in my mind. How can you avoid those statements that were made before the court? They are at best ambiguous, Your Honor, and they are subject to multiple interpretations. The interpretation you've mentioned, Judge Stranch, is one possible interpretation. The other interpretation is the one that I'm suggesting to the court, that it's one of those somewhat maybe hard to explain, but a statement that comes immediately dealing with we've got some cases where we've agreed to stay in Cleveland in 16 cases where trials have already begun, and Judge Lambros says I'm sending a batch of cases to Detroit. The response is we didn't agree for these cases that we've already, the 16 that we've waived jurisdiction, we'll stay here in the 16. We don't want those cases going to Detroit. The important thing is that is the interpretation that the MDL court concluded, that the statement dealt with the 16 cases for which trials had begun, and as the court pointed out in the Bolger case. I'm just struggling with that argument. Why would they be disputing the transfer of cases that are already engaged in trial? That would, to me, be the height of impracticality that the judge is saying, oh, by the way, I'm in the middle of trial. I've already engaged in pretrial case management. I've already picked a jury, but we are talking about transferring those cases to another venue. That makes no sense, Counselor. As the court has pointed out, there are many inexplicable things that occurred in connection with these particular cases, and I'm trying to understand from a 30-year, almost a 30-year perspective, what someone else intended when the words were said. But I would leave it with the court that it is an ambiguous statement. The MDL court interpreted the statement in the fashion that I'm suggesting this court should say. The MDL court was within its discretion in concluding that that statement referred to the 16 cases where personal jurisdiction had been waived. It had nothing to do with the 44 cases that were going to Detroit, according to what Judge Lambros had said, and it's within the district court's discretion, the MDL court's discretion, to interpret it as referring to the 16 cases. And this court, as the Bolger case indicated, should be deferential to how the district court assessed the situation. I see my time is out. I'm happy to respond to additional questions, but otherwise, thank you for your time, Your Honors. Thank you. I'd like to address quickly Mr. Henderson's comments on the Kalama decision. Now, Judge Stranch, in your concurring opinion, you said this about the very unique circumstances in Kalama. Quote, its result hinges on the unique circumstances surrounding the claims of 10 individual plaintiffs against 19 specific defendants. I concur because our result is based on the particulars of these cases. The Kalama cases are not these cases. The Kalama cases revolved around guys who existed as plaintiffs at the same time as the Detroit appellants did. That is not the remaining appellants. The remaining appellants are not factually similar to them, and we have not made the same legal argument either. So Kalama, as it relates to the lexicon argument, is distinguishable both factually for that reason and legally. Did you argue in Kalama that the judge mistakenly thought he didn't have the authority to recommend the transfer? That argument was not made in Kalama. It was available, but just not made? It was not made. I mean, I'm making it now, and it was not made in Kalama. It wasn't. The issues in Kalama are different than here, whereas Kalama talked about what we believe Judge Rebrano was required to do, at least the briefing at that time argued that. What is the remedy so we would send that to the judge and say, hey, we think you made a mistake and didn't know you had this authority? Can you take a look at it again? Sure. So no, you can't do that because Judge Rebrano is in the Eastern District of Pennsylvania, and I don't think there's a mechanism by which this court can send it back to Rebrano to say, hey, we think you made a mistake. Look at it again. What remedies do you have? At this point, the remedy is to send it back to the Northern District of Ohio and ask that court to decide what the appropriate remedy is, and that's actually all we're asking. Send it back to Ohio. Say Judge Rebrano was wrong. He had more than just dismissal available to him. You decide this issue, and that's it. That's all we're asking for. There's nothing more than that. Ohio is a court that has already passed judgment on what should happen here, and I'm sure my very capable opposing counsel will, when these cases go back to Ohio, raise these issues again. The Northern District of Ohio will then decide it with a full complement of remedies available to it, which is what our justice system here is built upon, giving every party an ability to have remedies available to it that weren't available in the MDL court. That's all we're asking. Has any case ever been tried in all this big mess of cases? It has. We've tried a number of cases over the years, and in all of those cases that were sent back to Ohio, several were resolved through trial or on the eve of trial or during trial. Some made it back. All tried in Cleveland, Northern District? Yes. That's my understanding, yes. These are 237? Of the remaining appellants, yes. Of the remaining appellants. How many more are there out there? This is it. It's the end of the 30 years. Yes, there are some. There's, I think, three or four cases still percolating in the Eastern District of Pennsylvania, but for all intents and purposes. But as far as the MDL proceeding has gone, those retained in Pennsylvania will stay there, and this is the last group being determined to either be sent away or dismissed. On this issue, for the Sixth Circuit, the answer to that is yes. Now, those three or four cases sitting over there, they came from Ohio, and if they survive Third Circuit appeals and then Judge Rubrano further motion action, those three or four cases would ultimately come back here. But by that point, what you're deciding today will have no bearing on those cases at all. For all intents and purposes, this is it. Thank you. We thank you both for your briefing and arguments, and we'll take the case under advisement. The remainder of our docket for today is not subject to oral argument.